UNITED STATES FIDELITY AND GUARANTY COMPANY, a corporation, and Gibbs Corporation, a corporation, Plaintiffs,

v.

William M. O'KEEFFE, as Deputy Commissioner, United States Department of Labor, Bureau of Employees' Compensation, Sixth Compensation District, Defendant.

No. 4469–Civil–J.

United States District Court
S. D. Florida,
Jacksonville Division.
March 13, 1962.

See also D.C., 240 F.Supp. 816.

814

Marks, Gray, Yates, Conroy & Gibbs, Jacksonville, Fla., for plaintiffs.

Edward F. Boardman, U. S. Atty., Jacksonville, Fla., for defendant.

SIMPSON, Chief Judge.

Plaintiffs raise two reasons why the award should be set aside; (1) that the claim of Jut James Elliott for compensation was not timely filed; (2) that Jut James Elliott is permanently and totally disabled and that part of his total disability is due to Elliott's pre-existing disability. The plaintiffs further insist that the award should be paid in part out of the Special Fund established pursuant to Title 33 U.S.C.A. § 944.

A claim must be filed for compensation provided under the Longshoremen's and Harbor Workers' Compensation Act, Title 33 U.S.C.A. Chapter 18, within one year after the injury occurs or the claim is barred, except if payment of compensation is made without award on account of such injury then the claim may be filed within one year of the last payment, Title 33 U.S.C.A. § 913.

Jut James Elliott received two injuries while employed by Gibbs Corp. in 1958. The first occurred on May 22, 1958, when he was trapped in the bilge room of a vessel and received an electric shock. The physical injury was minor but caused Elliott great fright. He was medically treated at the expense of the plaintiffs. Elliott did not give written notice of this injury to the deputy commissioner but the deputy commissioner found, pursuant to Title 33 U.S.C.A. § 912(d) that the employer had knowledge of the injury and has not been prejudiced by lack of such written notice. This finding is amply supported by the record. Elliott returned to work thereafter until he was again injured on August 21, 1958. This injury was also minor with respect to physical symptoms, but Elliott was unable to resume work after the August 21 injury because of a mental disorder diagnosed as schizophrenia. He attempted to return to work on August 28, 1958, but was not successful and has not been employed since. After he ceased employment plaintiffs began paying Elliott compensation for disability and paid his medical expenses. The last compensation payment was made early in 1960. On April 7, 1960, Elliott filed a claim for compensation with the office of the Deputy Commissioner.

Plaintiffs contend that its voluntary compensation payments were made solely because of the accident of August 21, 1958. They further contend that they made no compensation payments relating to the accident of May 22, 1958. Compensation is payable in respect of disability or death of an employee, Title 33 U.S.C.A. § 903(a). It is not the injury for which an employee is compensated but the disability resulting therefrom.

Dr. W. J. Spann, the psychiatrist who had examined and was treating Mr. Elli-

ott for his mental disorder, testified at the hearing before the deputy commissioner that the accident of May 22 was the precipitating cause of Mr. Elliott's disability. He further testified that the August 21 accident was a "final blow" but that the May 22 accident was the more important.

■ Plaintiffs, when they paid compensation to Elliott, paid in respect to disability caused largely by the accident of May 22, 1958. The fact that plaintiffs labelled these payments as occasioned by the accident of August 21 only is irrelevant. They paid compensation for a disability caused by both accidents, so that compensation is attributable to both accidents, especially to the accident of May 22 which was apparently the more important cause. Mr. Elliott filed his claim within one year after the final voluntary compensation payments made to him by plaintiffs and his claim is not barred by reason of the limitations of Title 33 U.S.C.A. § 913.

Plaintiffs' second contention involves the interpretation of Title 33 U.S.C.A. § 908(f) (1).

> "If an employee receive an injury which of itself would only cause permanent partial disability but which, combined with a *previous disability* does in fact cause permanent total disability, the employer shall provide compensation only for the disability caused by the subsequent injury * * *."

Therefore, plaintiffs assert the remaining compensation due for total permanent disability is to be paid out of a fund established in Title 33 U.S.C.A. § 944.

Dr. Spann testified that claimant, prior to the accidents, was probably a passive man and might have been classified as an inadequate personality. This underlying condition laid grounds for claimant's schizophrenic reaction to the accidents. Plaintiffs contend that claimant's underlying inadequate personality was a "previous disability" within the meaning of Section 908(f) so that the percentage of claimant's total disability due to this underlying condition should be paid out of the fund established in Section 944.

■ The phrase "previous disability" in Section 908(f) is ambiguous. Its meaning is not limited to disabilities resulting from a previous employment-connected injury. Lawson v. Suwannee Fruit & S.S. Co., 336 U.S. 198, 69 S.Ct. 503, 93 L.Ed. 611 (1949).

■ The Supreme Court adopted the rationale of the dissent of Chief Judge Groner in the case of National Homeopathic Hospital Association of D. C. v. Britton, 79 U.S.App.D.C. 309, 147 F.2d 561 (1945) cert. denied 325 U.S. 857, 65 S.Ct. 1185, 89 L.Ed. 1977. Chief Judge Groner wrote that the phrase "previous disability" should be given a normal meaning and not limited by the definition of disability found elsewhere in the Act, limiting disabilities to those resulting from employment-connected injuries. The purpose of the special fund provision was to encourage employers to hire handicapped workers without fear of having to pay full compensation in case of further accident disabling the worker. This purpose, according to Judge Groner, included aiding workers handicapped by previous disability arising from any cause. The Supreme Court, after reviewing the legislative history of the Longshoremen's and Harbor Workers' Compensation Act, agreed with this view in the Suwannee case.

Judge Groner went on in his dissent to calm the fears of those who argued that his definition of the phrase "previous disability" would lead to the bankruptcy of the special fund by broadening the phrase to allow recovery from the fund for any weakness of an employee prior to to the accident causing total disability.

> "It is accordingly, I think, clearly incorrect to argue, as the Board does, that by construing the term 'disability' in its ordinary sense, the effect would be to bring within the exception clause cases of injury from weak heart, diseased back, congenital deformity and such like afflictions. For, as was said by the New York Court of Appeals, and as has been said by us, and indeed by practically

all of the circuits, weakness, whether pathological or traumatic, which does not become manifest until a subsequent accident, is not ordinarily thought of as prior disability under any provision of the Act." 147 F.2d p. 566.

This view is consistent with the purpose of establishing a Special Fund. An employer is to be encouraged to hire those that he might not hire because of existing handicaps. An underlying weakness which is not manifest would not have any effect on an employer's decision to hire or not hire the workers with that weakness. The employer cannot consider what he does not realize.

I conclude that claimant's underlying inadequate personality is not a "previous disability" contemplated by the provisions of Title 33 U.S.C.A. § 908(f).

There is sufficient evidence in the record made before the Deputy Commissioner to support his award.