MAURICE P. FOLEY CO., INC., and Hartford Accident & Indemnity Co., Petitioners,

v.

James BALDERSON, and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

No. 76–2018.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 21, 1977.

Decided Dec. 16, 1977.

Rehearing Denied Jan. 12, 1978.

John C. Duncan, III, Washington, D. C., for petitioners.

Joshua T. Gillelan, II, Atty., Dept. of Labor, Washington, D. C., for respondent, Director, Office of Workers' Compensation Programs.

Harry L. Sheinfeld, Washington, D. C., also entered an appearance for Director, Office of Workers' Compensation Programs.

Mark L. Sheinfeld, also entered an appearance for respondent.

Before MacKINNON and ROBB, Circuit Judges, and MARKEY,* Chief Judge, United States Court of Customs and Patent Appeals.

Opinion for the Court PER CURIAM.

PER CURIAM:

This petition seeks to set aside an order of the Benefits Review Board ("Board") (J.A. 158) which affirmed the decision of the Administrative Law Judge ("ALJ") (J.A. 146) that § 8(f) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 908(f) (1970), did not relieve Hartford Accident & Indemnity Co. ("Hartford"), the workers' compensation carrier for Maurice P. Foley Co., Inc. ("Foley"), from the obligation to make compensation payments beyond 104 weeks to James Balderson, claimant and an employee of Foley. Section 8(f) is set out in the margin,[1] but in

---

* Sitting by designation pursuant to 28 U.S.C. § 293(a).

1. Section 8(f) provides as follows:

§ 908. Compensation for disability.
Compensation for disability shall be paid to the employee as follows:

\* \* \* \* \* \*

(f) Injury increasing disability:
(1) In any case in which an employee having an *existing permanent partial disability* suffers injury, the employer shall provide compensation for such disability as is found to be attributable to that injury based upon the average weekly wages of the employee at the time of the injury. If following an injury falling within the provisions of subdivision (c)(1)–(20) of this section, the employee is totally and permanently disabled, and the disability is found not to be due solely to that injury, the employer shall provide compensation for the applicable prescribed period of weeks provided for in that section for the subsequent injury, or for one hundred and four weeks, whichever is the greater. In all other cases of total permanent disability or of death, found not to be due solely to that injury, of an employee having an *existing permanent partial disability,* the employer shall provide in addition to compensation un-

pertinent part it provides that in any case in which an employee who has an "existing permanent partial disability" suffers an on-the-job injury which results in permanent total disability, the employer shall provide compensation payments to that employee for 104 weeks, after which the remainder of the compensation due to the employee shall be paid out of the Special Fund accumulated by payments from insurance carriers and self-insurers (*see* 33 U.S.C. § 944 (Supp. V 1975)).

The dispute in this case concerns from what source the compensation payments owed Balderson will be paid: if § 8(f) is applicable, benefits will be paid from the Special Fund, and Foley's carrier, Hartford, will not have to make any further payments. However, if § 8(f) is inapplicable, then Foley's carrier will be obligated to make payments beyond the 104-week period.

The standard by which we review administrative decisions under this Act is to reverse only if there is an error of law or when a finding of fact is unsupported by

substantial evidence on the record considered as a whole. *O'Leary v. Brown-Pacific-Maxon, Inc.,* 340 U.S. 504, 508, 71 S.Ct. 470, 472, 95 L.Ed. 483 (1951); *Presley v. Tinsley Maintenance Service,* 529 F.2d 433, 436 (5th Cir. 1976).[2] After careful consideration of petitioners' arguments, we conclude that substantial evidence supports the ALJ's findings and that no error of law was committed by the Board.

Balderson, who had been employed as a steamfitter for nearly twenty-three years, began employment with Foley in June, 1972. While in its employ, he was exposed to various air pollutants which exacerbated a chronic asthmatic and obstructive pulmonary condition. It was stipulated by the parties that Balderson is totally and permanently disabled as a result of severe pulmonary impairment caused by his exposure to pollutants while working for Foley (J.A. 2–4).

The ALJ held that § 8(f) was not applicable to this case. His decision was based on three grounds,[3] one of which was that any

---

der paragraphs (b) and (e) of this section, compensation payments or death benefits for one hundred and four weeks only. If following an injury falling within the provisions of subdivision (e)(1)–(20) of this section, the employee has a permanent partial disability and the disability is found not to be due solely to that injury, and such disability is materially and substantially greater than that which would have resulted from the subsequent injury alone, the employer shall provide compensation for the applicable period of weeks provided for in that section for the subsequent injury, or for one hundred and four weeks, whichever is the greater.

In all other cases in which the employee has a permanent partial disability, found not to be due solely to that injury, and such disability is materially and substantially greater than that which would have resulted from the subsequent injury alone, the employer shall provide in addition to compensation under paragraphs (b) and (e) of this section, compensation for one hundred and four weeks only.

(2) After cessation of the payments for the period of weeks provided for herein, the employee or his survivor entitled to benefits shall be paid the remainder of the compensation that would be due out of the special fund established in section 944 of this title.

33 U.S.C. § 908 (Supp. V 1975) (emphasis added).

**2.** Unlike boards which can, on the record developed by the ALJ, make independent findings of fact, 5 U.S.C. § 557(b) (1970), the Benefits Review Board is restricted to substantial evidence review, 33 U.S.C. § 921(b)(3) (Supp. V 1975). If the Board departs from that legal standard in reviewing the decision of the ALJ, we must reverse. *Atlantic & Gulf Stevedores, Inc. v. Director, Office of Workers' Compensation Programs,* 542 F.2d 602, 608 (3d Cir. 1976).

**3.** The ALJ based his decision on three grounds. In addition to the point of whether the condition was "manifest" to the employer, the ALJ held (1) that Balderson did not have an "existing permanent partial disability" in an *economic* sense, as opposed to a medical sense, within the meaning of § 8(f) before he was exposed to the lung irritants while working for Foley; and (2) that, as a matter of law, when an employee's multi-year occupation exposures with various employers contributed to a chronic condition and his eventual permanent total disability, the last employer for whom he was working is liable in full for the compensable consequences of the injury (J.A. 146). The Board did not rely on these two grounds, and hence, we need not address ourselves to these issues. We do note, however, that the contention that

disabling condition Balderson had at the time of his hiring by Foley was not "manifest" to Foley. On appeal to the Benefits Review Board (under authority of 33 U.S.C. § 921(b) (Supp. V 1975)), the ALJ's decision was affirmed on the sole ground that Balderson's condition was not "manifest" when Foley hired him. This petition to review the Board's decision is before this Court by authority of 33 U.S.C. § 921(c) (Supp. V 1975) which provides as follows:

> Any person adversely affected or aggrieved by a final order of the Board may obtain a review of *that* order in the United States court of appeals for the circuit in which the injury occurred . . . .

(Emphasis added). Thus the issue before this Court is the propriety of the Board's determination that Balderson's condition was not "manifest" at the time of his hiring by Foley.

█ The purpose of § 8(f) prior to the 1972 amendments to the Act, 33 U.S.C. § 908(f) (1970), was explained by the Supreme Court in *Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 201, 69 S.Ct. 503, 93 L.Ed. 611 (1949), as "the prevention of employer discrimination against handicapped workers." This purpose has not been altered by the 1972 amendments (Pub.L. No. 92–576, 86 Stat. 1257, effective November 26, 1972). As explained by this court in *C & P Telephone Co. v. Director, Office of Workers' Compensation Programs*, 564 F.2d 503 (D.C.Cir. 1977),

> [T]he purpose of new § 8(f) is to prevent discrimination against handicapped workers in hiring and firing, a discrimination encouraged by the remainder of the Act were it not for § 8(f). The Act makes the employer liable for compensation. Hence, the employer risks increased liability when he hires or retains a partially disabled worker. By virtue of the contribution of the previous partial disability,

such a worker injured on the job may suffer a resulting disability greater than a healthy worker would have suffered. Were it not for the shifting of this increased compensation liability from the employer to the Special Fund under § 8(f), the Act would discourage employers from hiring and retaining disabled workers.

184 U.S.App.D.C. at 27, 564 F.2d at 512. To effectuate this intent, prior cases have established that the preexisting disability must have been "manifest" to the employer before § 8(f) can be invoked. *E. g., Atlantic & Gulf Stevedores, Inc. v. Director, Office of Workers' Compensation Programs*, 542 F.2d 602, 609 (3d Cir. 1976); *Dillingham Corp. v. Massey*, 505 F.2d 1126, 1127 (9th Cir. 1974); *American Mutual Ins. Co. v. Jones*, 138 U.S.App.D.C. 269, 273–74, 426 F.2d 1263, 1267–68 (1970). As we explained in *C & P Telephone,*

> This requirement is consistent with the legislative intent because if the previous disability had not been manifest, the employer would have had no reason to discriminate against the handicapped person in hiring or firing.

184 U.S.App.D.C. at 29, 564 F.2d at 514 n.10.

█ The determination of whether a condition is "manifest" or "latent" is a factual one which relies upon a number of factors. Courts have recognized that the critical element is what information the employer has available to him when the employee is hired. *Duluth, Missabe and Iron Range Ry. Co. v. U.S. Dept. of Labor*, 553 F.2d 1144, 1151 (8th Cir. 1977); *Dillingham Corp. v. Massey, supra,* at 1128. *See Equitable Equipment Co., Inc. v. Hardy*, 558 F.2d 1192, 1196–99 (5th Cir. 1977).

█ The Board cited references in the record to support its conclusion that sub-

---

Balderson did not have a disability in an *economic* sense would have no force in light of our decision in *C & P Telephone,* where we joined the growing number of circuits rejecting the requirement that the disability exist in an "economic" as opposed to medical sense. *E. g., C & P Telephone Co. v. Director, Office of Work-*

ers' Compensation Programs, 184 U.S.App.D.C. 18, 27–29, 564 F.2d 503, 512–514 (1977); *Equitable Equipment Co., Inc. v. Hardy*, 558 F.2d 1192, 1198 (5th Cir. 1977); *Atlantic & Gulf Stevedores, Inc. v. Director, Office of Workers' Compensation Programs*, 542 F.2d 602, 608–09 (3d Cir. 1976).

stantial evidence supported the ALJ's decision on the "manifest" point (J.A. 161). Petitioners attack the Board's references and aver that those findings do not constitute substantial evidence (Pet. Br. 23–26). We disagree. We believe that substantial evidence does support the finding that the injury was not manifest; hence, the Board's decision was entirely proper.

The Board observed that claimant had always put in a full day's work notwithstanding his condition. Petitioners point to evidence that claimant missed work prior to his employment with Foley. These absences were not so significant that the employer should have known of the extent of Balderson's condition. The Board also noted that claimant worked roughly the same number of hours in 1971 and 1972; this lends weight toward the finding that no circumstance existed which would render Balderson's condition manifest at the time of his hiring by Foley. The Board further observed that Balderson's 1972 medical discharge from the hospital stated that the claimant was able to continue his occupation of a steamfitter. Clearly, this is the type of factor which would tend to conceal the nature of Balderson's condition from his employer.

In addition, the Board noted that Foley did not give Balderson a medical examination. This fact lends weight to the conclusion that the employer did not appreciate the extent of the claimant's condition. The Board also made a separate finding that Foley did not know the seriousness of Balderson's breathing problems. The fact that a condition is manifest to a physician does not necessarily mean that the condition is manifest to the employer. *Dillingham v. Massey, supra*, at 1128. Finally, the Board observed that claimant was not given any special treatment which would allow the inference that Foley was aware of Balderson's condition.

Because substantial evidence supports the findings of the ALJ and because the Board committed no error of law upon review, we affirm the Board's decision.

*So ordered.*