**C & P TELEPHONE COMPANY,**
**Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPART-**
**MENT OF EMPLOYMENT SER-**
**VICES, Respondent,**

**Patricia Robertson, Intervenor.**

**No. 92–AA–40.**

District of Columbia Court of Appeals.

Argued Nov. 3, 1993.
Decided March 15, 1994.

unfair as to violate due process" (emphasis add-   ed; original emphasis omitted)).

James G. Healy, Washington, DC, for petitioner.

Keith W. Donahoe, Washington, DC, for intervenor.

Charles L. Reischel, Deputy Corp. Counsel, and John Payton, Corp. Counsel, for respondent District of Columbia Dept. of Employment Services, adopting intervenor's brief.

Before ROGERS, Chief Judge, and FERREN and WAGNER, Associate Judges.

ROGERS, Chief Judge:

Petitioner, C & P Telephone Company, seeks review of a decision of the District of Columbia Department of Employment Services that petitioner must pay intervenor Patricia Robertson's attorney's fees under the District of Columbia Workers' Compensation Act, D.C.Code § 36–330(a) (Repl.1993). Petitioner contends that the agency erred as a matter of law in ruling that § 36–330(a) applied where the employer had initially voluntarily provided some compensation, in the form of medical services, but did not pay monetary compensation immediately upon receipt of a doctor's report indicating an opinion on permanency. Petitioner also contends that the agency erred in awarding attorney's fees because intervenor failed to prove that the amount was reasonable. We hold that the agency's interpretation of § 36–330(a) is contrary to the plain language of the statute and the District's statutory scheme, which requires that only one written claim for compensation be filed. Accordingly, we reverse.

## I.

On November 7, 1982, intervenor Patricia Robertson injured her left knee in the course of her employment with petitioner C & P Telephone Company. After intervenor timely filed a claim under the District of Columbia Workers' Compensation Act, *see* D.C.Code § 36–314 (Repl.1993), petitioner provided medical treatment for intervenor at its clinic and later by Dr. Feffer, to whom she was referred by the clinic. Intervenor did not miss time from work as a result of the injury, however, and petitioner did not pay any temporary total disability benefits.

On May 2, 1985, intervenor, through counsel, requested that the agency schedule an informal conference based on the March 27, 1985, medical report of Dr. Neil Green, who concluded that intervenor had suffered a ten percent permanent partial disability in her left leg. Petitioner received the doctor's report on May 15, 1985. An informal conference was held on June 11, 1985.[1] Thereafter, on July 16, 1985, the claims examiner issued a memorandum of informal conference. The memorandum stated that the claims examiner had concluded that intervenor was entitled

---

1. The agency sent petitioner a notice of informal conference, referencing the medical report, on May 8, 1985. A second notice was sent on May 14, 1985, scheduling the informal conference for June 11, 1985.

to receive compensation for permanent partial disability and recommended payment for ten percent permanent partial disability of the left leg of $11,472.26, which was due and payable. The claims examiner also recommended that petitioner assume liability for medical treatment rendered to intervenor and continue to provide it to her pursuant to D.C.Code § 36–307. The memorandum further reported that petitioner had requested that another doctor be chosen by the agency. By letter of July 23, 1985, to intervenor's counsel, petitioner sent a check to intervenor in the full amount. The check was cashed on July 29, 1985.

On July 25, 1985, intervenor's attorney requested that the agency approve attorney's fees, attaching a listing of legal services provided from April 28, 1983 through July 11, 1985, showing a total of 22.50 hours at $100 an hour, and the cost of the medical services of Dr. Green. The agency ultimately assessed against petitioner the total amount sought "subject to [a maximum of] 20 percent of actual benefits secured by counsel."

Petitioner maintained, however, that it was not liable for attorney's fees under either §§ 36–330(a) or 36–330(b) because it had paid compensation to intervenor before thirty days had expired after demand for payment was made by intervenor and never controverted the claim. Additionally, petitioner argued that the fees, if properly awarded, were without foundation and unreasonable. On December 14, 1987, a hearing was held at which the parties stipulated that intervenor had filed a timely claim and that petitioner had made payment for permanent partial impairment on July 22, 1985, pursuant to an informal conference recommendation. Petitioner also presented testimony regarding what had occurred at the informal confer-

ence, namely that its representative, Ms. Hunter, had requested that another physical examination be conducted by a physician chosen by the agency, because she "did not agree with the permanent disability rating," and that she had agreed to pay intervenor for the degree of disability found by the independent physician.[2]

The Hearing Examiner issued a compensation order on February 12, 1988, finding that prior to the informal conference petitioner stated that it accepted responsibility for the injury but not the disability rating, and that petitioner made payment to intervenor on July 22, 1985, pursuant to the informal conference recommendation.[3] Significantly, the Examiner rejected petitioner's argument that attorney's fees were not due because its payment of medical expenses was the payment of compensation, making § 36–330(b) applicable. The Hearing Examiner appeared to reject this argument because petitioner had failed to demonstrate why it did not obtain an examination by an independent doctor between May 15, 1985, when it received the disability rating, and June 11, 1985, the date of the informal conference. Apparently, for this reason, the Examiner did not accept petitioner's position that it did not refute liability, but instead had exercised its right to an independent medical examination. Finally, the Examiner determined that § 36–330(b) was inapplicable because "compensation was not being paid to [intervenor]." Instead, the Examiner found that petitioner did not pay any permanent partial disability benefits until ordered to do so by an informal conference recommendation. The Examiner noted that in *Nima v. Katania Bakery,* H & AS No. 86–161, July 16, 1988, the agency had rejected arguments similar to those presented by petitioner. Therefore, because peti-

2. Ms. Hunter was a staff supervisor in petitioner's legal office that handles workers' compensation cases. She testified that she had received the claims examiner's recommendation on July 18, 1985, and that although she had not yet received an evaluation from the independent medical examiner, she decided to pay the compensation recommended by the claims examiner and sent a check on July 23, 1985, fewer than fourteen days after she had received the recommendation. On cross-examination, Ms. Hunter acknowledged that it was common for a claimant and an employer to engage the services of an

independent examiner for disability ratings. The significance of Ms. Hunter's testimony is limited, however, because the Hearing Examiner did not find Ms. Hunter's testimony "credible."

3. The compensation order incorrectly stated that the informal conference recommendation was issued on July 18, 1985. The record indicates that the recommendation was issued on July 16, 1985, and received by petitioner on July 18, 1985.

tioner did not pay permanent disability compensation before intervenor secured counsel and counsel had prepared for the case, the Examiner concluded that petitioner was liable for intervenor's attorney's fees under § 36–330(a) and that the fee was reasonable under the factors in 7 DCMR 3625.2 (1986).

Petitioner appealed, and the Director affirmed. The Director noted that petitioner had not paid any compensation for intervenor's permanent partial disability prior to the informal conference or at the conference, and that although petitioner did not file a Notice of Controversion, "the record indicates that petitioner did not acknowledge liability for compensation, until the claims examiner issued the recommended decision." In the Director's view, "[t]he fact that employer never filed a notice [of controversion] is not controlling, as under D.C.Code § 36–330(a), the key is that the employer never acknowledged liability for compensation and did not pay within thirty days [of receiving the doctor's disability rating]."

## II.

Petitioner contends that the agency erred as a matter of law in ruling that D.C.Code § 36–330(a), and not § 36–330(b), was applicable. Petitioner argues that it had paid some compensation in the form of medical treatment shortly after intervenor's injury and had timely paid the recommended permanency compensation within fourteen days after the informal conference. More particularly, in its reply brief, petitioner maintains

that the agency erred in treating intervenor's May 15, 1985, request for permanent partial disability compensation as a "claim for compensation" for purposes of triggering § 36–330(a)'s thirty-day limitation period. Rather, petitioner maintains, it had already responded to intervenor's claim for compensation by paying her timely medical benefits; accordingly, petitioner should not have been penalized for failing to pay intervenor compensation within thirty days of receiving the disability rating from Dr. Green on May 15, 1985, because the term "claim for compensation" refers to initial claims for benefits only, not subsequent requests.

■ Under the D.C. Workers' Compensation Act, a person claiming compensation may be entitled to recover attorney's fees in only two situations: first, if the employer refuses to pay "any compensation" for a work-related injury within thirty days of receiving written notice from the Mayor of "a claim for compensation," and the claimant consequently uses the services of an attorney to prosecute successfully his or her claim, D.C.Code § 36–330(a);[4] and second, if an employer "pays or tenders payment of compensation without an award" but later refuses to pay the additional compensation claimed by the claimant within fourteen days of receiving a recommendation by the Mayor that the claim is justified, and the claimant uses the services of an attorney to recover the full amount claimed. D.C.Code § 36–330(b).[5] The Act provides for attorney's fees

4. D.C.Code § 36–330(a) provides that:
   If the employer or carrier declines to pay any compensation on or before the 30th day after receiving written notice from the Mayor that a claim for compensation has been filed, on the grounds that there is no liability for compensation within the provisions of this chapter, and the person seeking benefits thereafter utilizes the services of an attorney-at-law in the successful prosecution of his claim, there shall be awarded, in addition to the award of compensation, in a compensation order, a reasonable attorney's fee against the employer or carrier in an amount approved by the Mayor ... which shall be paid ... in a lump sum after the compensation order becomes final.

5. D.C.Code § 36–330(b) provides that:
   If the employer or carrier pays or tenders payment of compensation without an award

pursuant to this chapter, and thereafter a controversy develops over the amount of additional compensation, if any, to which the employee may be entitled, the Mayor shall recommend in writing a disposition of the controversy. If the employer or carrier refuse to accept such written recommendation, within 14 days after its receipt by them, they shall pay or tender to the employee in writing the additional compensation, if any, to which they believe the employee is entitled. If the employee refuses to accept such payment or tender of compensation and thereafter utilizes the services of any attorney-at-law, and if the compensation thereafter awarded is greater than the amount paid or tendered by the employer or carrier, a reasonable attorney's fee based solely on the difference between the amount awarded and the amount tendered or paid shall be awarded in addition to the amount of compensation. The

for review proceedings before the Mayor or court as well, and places a cap on fees in excess of twenty percent of "the actual benefits secured through the efforts of an attorney...." *See* D.C.Code § 36–330(c)–(d), & (f).

Sections 36–330(a) and (b) of the Act are virtually identical to the comparable provisions of the federal Longshore and Harbor Workers Act. *See* 33 U.S.C. § 928(a) and (b) (1989). Consequently, petitioner, in maintaining that the agency erred as a matter of law in ruling that D.C.Code § 36–330(a) and not § 36–330(b) applied, urges the court to be guided by the interpretations of the federal act. Petitioner relies on two decisions by the United States Court of Appeals for the Fifth Circuit.

In *Savannah Mach. & Shipyard Co. v. Director, Office of Workers' Compensation Programs*, 642 F.2d 887, 888 (5th Cir.1981), the Fifth Circuit affirmed an agency interpretation that section [9]28(a) was inapplicable where the employer had commenced paying partial benefits within thirty days after the employee had filed a claim for compensation under the statute. In that case, the employer had requested a hearing on whether and to what extent the employee was disabled by his injury. The court noted that the statute had been amended in 1972 to impose liability on an employer for a separate award of attorney's fees when "the existence or extent of liability is controverted and the claimant employs legal counsel and successfully prosecutes his or her claim." *Id.* at 888 (citations omitted). The court agreed that the employer was liable for attorney's fees under section 928(b). *Id.* at 890.

In an earlier decision by the Fifth Circuit, where the employer had also commenced paying compensation benefits immediately after the employee had filed a claim for statutory benefits but at a hearing had con-

tested the employee's right to receive medical expenses, the court observed that:

Section 928(a) provides an incentive for employers to pay claims rather than contest them. That incentive consists of assessing attorney's fees against the employer when the employer denies a legitimate claim and the employee uses the services of an attorney to obtain his [or her] statutory benefits. This incentive also applies equally to monetary compensation and medical benefits. It is best promoted by considering medical services to be a component of the term "compensation" in Section 928(a).

*Oilfield Safety & Mach. Specialties, Inc. v. Harmon Unlimited, Inc.*, 625 F.2d 1248, 1257 (5th Cir.1980). The court concluded that the term "compensation" was not a term of art, relying specifically on the provision of the federal statute, 33 U.S.C. § 904(a), which provides that "[e]very employer shall be liable for and secure the payment to his [or her] employees of the compensations payable under Sections 907, 908, and 909 of this Title." *Id.* at 1257. Section 907 provides that the employer shall provide medical services. Thus, the court observed, "Congress used the term 'compensation' on several occasions in a fashion encompassing medical expenses." *Id.*

The D.C. Workers' Compensation Act defines "compensation" to mean "the money allowance payable to an employee or to his dependents as provided for in this chapter, and includes funeral benefits provided herein." D.C.Code § 36–301(6). The statute addresses the responsibility of employers to provide medical treatment to injured employees, *see* D.C.Code § 36–307, and specifically refers to medical benefits as encompassed within the meaning of compensation. *See* D.C.Code § 36–305(a) ("[n]o compensation

foregoing sentence shall not apply if the controversy relates to degree or length of disability, and if the employer or carrier offers to submit the case for evaluation by physicians employed or selected by the Mayor, as authorized in § 36–307(e), and offers to tender an amount of compensation based upon the degree or length of disability found by the independent medical report at such time as an evaluation of disability can be made. If the

claimant is successful in review proceedings before the Mayor or court in any such case, an award may be made in favor of the claimant and against the employer or carrier for a reasonable attorney's fee for claimant's counsel in accordance with the above provisions. In all other cases any claim for legal services shall not be assessed against the employer or carrier.

shall be allowed for the first 3 days of the disability, except the benefits provided for in § 36–307"). The federal statute addresses the issue somewhat more directly, providing that employers shall be liable for payment of compensation in the form of monetary allowances as well as medical services. *See* 33 U.S.C. § 904(a) ("[e]very employer shall be liable for and shall secure the payment to his employees of the compensation payable under sections 907 [medical services and supplies], 908 [compensation for disability] and 909 [compensation for death] of this title"). Nevertheless, there is no relevant, material difference between the statutes. Thus, the rationale of the Fifth Circuit, in reaching the conclusion that compensation includes medical services and that section 928(b) applied, would appear to be no less applicable here. In both instances, the legislature has used the term "compensation" to include "medical services." *See Oilfield Safety & Mach. Specialties, Inc. v. Harmon Unlimited, Inc., supra,* 625 F.2d at 1257; 33 U.S.C. § 904(a).[6]

Of course, because the decisions of the Fifth Circuit on which petitioner relies were decided after the Council of the District of Columbia enacted the local statute, the Council cannot be deemed to have adopted the interpretation that "compensation" includes medical treatment. *See McReady v. Dep't of Consumer & Regulatory Affairs,* 618 A.2d 609, 615 (D.C.1992) (citation omitted). Therefore, the question remains whether the agency's interpretation of § 36–330, under which each request for compensation triggers the thirty-day period under § 36–330(a), is reasonable and not contrary to law. *See Harris v. District of Columbia Dep't of Employment Servs.,* 592 A.2d 1014, 1016 (D.C. 1991) (court will defer to agency's interpreta-

tion of its enabling statute if reasonable and not contrary to law); *Ceco Steel, Inc. v. District of Columbia Dep't of Employment Servs.,* 566 A.2d 1062, 1064 (D.C.1989); *Smith v. District of Columbia Dep't of Employment Servs.,* 548 A.2d 95, 97 (D.C.1988) (no deference where agency interpretation "conflicts with the plain meaning of the statute or its legislative history").

■ The agency's interpretation that § 36–330(a) applies not only when a claim is filed initially, but also when there is a later claim for permanent partial disability, is consistent with a Benefits Review Board interpretation of the federal statute, but inconsistent with the plain language of the provision. In *Baker v. Todd Shipyards Corp.,* 12 BRBS 309, 313 (1980), the Benefits Review Board ruled that the employer was liable for attorney's fees under 33 U.S.C. § 928(a) although the employer did not contest liability and had voluntarily paid temporary total disability compensation beginning on the fourth day after the employee was injured until the employee was released by the doctor to return to work. Two months later, the employee filed a claim for permanent partial disability, and the employer, who refused to pay voluntarily, did not pay until the claims examiner had made a recommendation following an informal conference. *Id.* at 310–11. Noting that the "claim for permanent partial disability was different in kind as well as in amount from the compensation for temporary total disability which was voluntarily paid," the Benefits Review Board ruled that the payment of temporary benefits "has no bearing on the refusal to pay [the] claim for permanent partial compensation." *Id.* at 313. Whether its cited authority supported its conclusion or not,[7] and whether it has been

6. In another context, however, the court has recognized that for some purposes there is a distinction between an employer's liability for monetary compensation and for medical treatment. *See Santos v. District of Columbia Dep't of Employment Servs.,* 536 A.2d 1085, 1089 n. 6 (D.C.1988) ("[t]he right to medical benefits is separate and distinct from the right to income benefits") (citing 2 ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION, § 61.11(b) (1987)); *see also Dyson v. District of Columbia Dep't of Employment Servs.,* 566 A.2d 1065, 1067–68 (D.C. 1989) ("[t]he Mayor's regulations implementing the Workers' Compensation Act suggest ... that

not every act by an employee in pursuit of medical treatment is a 'claim' or 'attempted claim' for compensation. The regulations define a claim as 'an *application* for benefits made by an injured employee or his or her beneficiary under §§ 36–308 & 36–309 of the Act.'") (citing 7 DCMR § 299.1 (1986)).

7. The two cases cited—*National Steel & Shipbuilding Co. v. United States Dep't of Labor, Office of Workers' Compensation Programs,* 606 F.2d 875 (9th Cir.1979), and *Presley v. Tinsley Maintenance Serv.,* 529 F.2d 433 (5th Cir.1976)—do not appear to support the conclusion of the Benefits

subsequently overruled,[8] the interpretation of the Benefits Review Board in *Baker v. Todd Shipyards Corp., supra,* cannot prevail under the District's statute.

D.C.Code § 36–314(a) provides that only one written claim for compensation is required to be filed by an employee: "[o]nce a claim has been filed with the Mayor, no further written claims are necessary." This language does not appear in the federal statute. *See* 33 U.S.C. § 913.[9] Consequently, for purposes of interpreting the applicability of D.C.Code § 36–330(a), the reference to "claim for compensation" in that section must refer to the initial claim filed under § 36–314(a), since there are no other "claims for compensation" under the District's statute, and not to subsequent requests for disability compensation. In other words, the analysis in *Baker v. Todd Shipyards Corp., supra,* 12 BRBS 309, is incompatible with the District's statute, which provides that only one written claim for statutory compensation must be filed. Thus, the Council of the District of Columbia, in changing the claim provision in the District's workers' compensation statute, implicitly rejected the position adopted by the agency in the instant case that each request for compensation triggers the thirty-day period under § 36–330(a). As petitioner maintains, under the District's statute, any questions that arise throughout the course of a case, after a claim has been filed under § 36–314(a), do not constitute new and separate "claims for compensation," but are simply different issues that must be addressed with respect to an employee's claim. Therefore, the employer's receipt on May 15, 1985, of Dr. Green's disability rating could not trigger the thirty-day period under § 36–330(a).

■ By its plain terms, moreover, § 36–330(a) is inapplicable because petitioner did not "decline[ ] to pay any compensation" within the thirty-day period. Intervenor received compensation benefits from petitioner in the form of medical services after intervenor had filed a claim under § 36–314(a), which the parties stipulated was timely filed. There is nothing in the record to indicate that petitioner did not provide intervenor with medical services within thirty days of receiving notice that intervenor had filed a claim for compensation. The agency's reliance on *Nima v. Katania Bakery, supra,* is misplaced since the facts are clearly distinguishable. In *Nima,* the employer had paid no benefits whatsoever and had filed a notice of controversion.[10] *Nima v. Katania Bakery, supra,* at 2. By contrast, petitioner in the instant case provided medical services and did not file a notice of controversion, as the Hearing Examiner found and the Director acknowledged. Hence, the rationale for applying § 36–330(a) in *Nima* is inapplicable here.

■ In addition, the agency erred as a matter of law in ruling that § 36–330(b) was inapplicable. The plain language of the pro-

Review Board in *Baker.* In *National Steel, supra,* the issue was the employer's liability for attorney's fees under section 928(b), not section 928(a). 606 F.2d at 881–83. In *Presley, supra,* the issue turned on the fact that the employer had contested permanent partial disability but not future temporary total disability payments, and the court concluded that the former was not the same as contesting a claim for future temporary benefits. 529 F.2d at 437.

8. Petitioner maintains that *Baker* has been implicitly overruled in *Savannah Mach. & Shipyard Co. v. Director, Office of Workers' Compensation Programs, supra,* 642 F.2d 887 (where employer previously paid some compensation, § 928(a) inapplicable).

9. The federal statute, 33 U.S.C. § 913(a), is otherwise identical to D.C.Code § 36–314(a) except that the District's statute does not include the following provision of the federal statute:

Notwithstanding the provisions of subsection (a) of this section, a claim for compensation for death or disability due to an occupational disease which does not immediately result in such death or disability shall be timely if filed within two years after the employee or claimant becomes aware, or in the exercise of reasonable diligence or by reason of medical advice should have been aware, of the relationship between the employment, the disease, and the death or disability, or within one year of the date of the last payment of compensation, whichever is later.

33 U.S.C. § 913(b)(2).

10. *See* 7 DCMR § 210.2 (1986) ("[i]f the right to compensation is disputed, an employer shall file [a] Notice of Controversion ... on or before the fourteenth (14th) working day after the employer has knowledge of the injury and its relationship to the employment"; *id.* § 210.3 (contents of the Notice of Controversion).

vision demonstrates that it applies where the employer contests the extent of disability. The Director was bound by the Hearing Examiner's finding, which was supported by substantial evidence, that petitioner "did not controvert the claim" but accepted responsibility for the injury but not the disability rating. *See George Hyman Const. Co. v. District of Columbia Dep't of Employment Servs.*, 498 A.2d 563, 565 (D.C.1985) (limiting Director to a substantial evidence review of a hearing examiner's decision); *cf. Presley v. Tinsley Maintenance Serv., supra* note 7, 529 F.2d at 436 (findings of administrative law judge must be accepted by Benefits Review Board unless findings are not supported by substantial evidence). So too, the Director was bound by the finding that petitioner had requested an independent examination. In the memorandum of informal conference, the claims examiner noted that petitioner had requested that a medical examination be conducted by a doctor chosen by the agency. There is nothing to indicate that intervenor disputed Ms. Hunter's testimony that she had stated at the informal conference that petitioner would pay in accordance with the disability found as a result of the independent examination.[11] Contrary to intervenor's argument, petitioner bears no burden under the statute to schedule the medical examination. *See* D.C.Code § 307(e) (physician to be selected by the Mayor).[12] The Hearing Examiner's finding that petitioner failed to explain why it had not requested or obtained an independent examination before the informal conference on June 11, 1985, fails to provide a basis for concluding that § 36–330(b) is inapplicable. The critical fact is that petitioner paid the full amount claimed—ten percent permanent

partial disability—within fourteen days of the informal conference recommendation.[13] Under these circumstances, the agency erred in concluding both that § 36–330(b) was inapplicable and that petitioner was liable for any attorney fees.

As explained by the Ninth Circuit in *National Steel & Shipbuilding Co. v. United States Dep't of Labor, Office of Workers' Compensation Programs, supra* note 7, 606 F.2d at 882:

> The purpose of the statute [33 U.S.C. § 928(b) ] is to authorize the assessment of legal fees against employers in cases where the existence or extent of liability is controverted and the employee-claimant succeeds in establishing liability or obtaining increased compensation in formal proceedings in which he or she is presented by counsel. [citations omitted] The statute provides methods by which the employer can limit its liability for fees through agreeing to [an] independent medical evaluation of the employee or by tendering the amounts it believes are due. [citations omitted]

*See Todd Shipyards v. Director, Office of Workers' Compensation Programs*, 950 F.2d 607, 611 (9th Cir.1991) ("[i]n enacting Section 928(b), Congress has determined ... that if an employer pays the benefits claimed by the employee, the employer will not be responsible for attorney's fees unless the employer rejects the written recommendation of the claims examiner following the informal hearing and the employee obtains additional benefits at a formal hearing before the Department of Labor") (citing *Kemp v. Newport News Shipbuilding*, 805 F.2d 1152, 1153 & n. 3 (4th Cir.1986) ("Congress intended that disputes first be resolved without the parties

---

11. During closing argument at the hearing, counsel for intervenor stated that "at the informal conference on June 11, 1985, [petitioner] disputed their liability. They refused to pay unless a third doctor was brought into the case." We do not view this to be inconsistent with petitioner's position that it would pay according to the disability found by the independent doctor appointed by the Mayor.

12. The regulations are silent on the subject. *See also* D.C.Code § 36–320(f) (employee "shall submit to such physical examination by a medical officer of the District of Columbia or by a duly

qualified physician or panel of physicians designated or approved by the Mayor as the Mayor may require.... Proceedings shall be suspended and no compensation be payable for any period during which the employer may refuse to submit to examination").

13. We need not and do not decide whether petitioner's request for an independent medical examination tolled the time within which petitioner had to pay or tender compensation to intervenor in order to avoid being assessed for her attorney's fees.

having to rely on assistance other than that provided by the [U.S.] Department of Labor")).

Accordingly, we reverse the decision of the Director affirming the assessment of intervenor's attorney's fees pursuant to § 36–330(a), and we do not reach petitioner's challenge to the amount of the assessment, since under § 36–330(b) petitioner is not liable for attorney fees.